UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

SHAWN PAUL GROSSMAN,

                Plaintiff,

v.

SARAH SCHROEDER et al.,

                Defendants.

_____/

Case No. 2:24-cv-190

Honorable Paul L. Maloney

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff filed an application to proceed *in forma pauperis* (ECF No. 2); however, Plaintiff is barred from proceeding *in forma pauperis* under 28 U.S.C. § 1915(g). Where a plaintiff is ineligible for *in forma pauperis* status under 28 U.S.C. § 1915, "he must make full payment of the filing fee before his action may proceed." *In re Alea*, 286 F.3d 378, 380 (6th Cir. 2002).

Plaintiff has filed at least three lawsuits that were dismissed as frivolous, malicious, or for failure to state a claim, and Plaintiff has not demonstrated that he is in imminent danger of serious physical injury to allow him to proceed *in forma pauperis* in this action. Further, Plaintiff has not paid the $405.00 civil action filing fees applicable to those not permitted to proceed *in forma pauperis*.[1] Accordingly, for the reasons set forth below, this action will be dismissed without prejudice pursuant to 28 U.S.C. § 1915(g).

_____

[1] The filing fee for a civil action is $350.00. 28 U.S.C. § 1914(a). The Clerk is also directed to collect a miscellaneous administrative fee of $55.00. 28 U.S.C. § 1914(b); https://www.uscourts. gov/services-forms/fees/district-court-miscellaneous-fee-schedule. However, the miscellaneous administrative fee "does not apply to applications for a writ of habeas corpus or to persons granted

**Discussion**

The Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996), amended the procedural rules governing a prisoner's request for the privilege of proceeding *in forma pauperis*. As the United States Court of Appeals for the Sixth Circuit has stated, the PLRA was "aimed at the skyrocketing numbers of claims filed by prisoners—many of which are meritless—and the corresponding burden those filings have placed on the federal courts." *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997). For that reason, Congress created economic incentives to prompt a prisoner to "stop and think" before filing a complaint. *Id.* For example, a prisoner is liable for the civil action filing fee, and if the prisoner qualifies to proceed *in forma pauperis*, the prisoner may pay the fee through partial payments as outlined in 28 U.S.C. § 1915(b). The constitutionality of the fee requirements of the PLRA has been upheld by the Sixth Circuit. *Id.* at 1288.

In addition, another provision reinforces the "stop and think" aspect of the PLRA by preventing a prisoner from proceeding *in forma pauperis* when the prisoner repeatedly files meritless lawsuits. Known as the "three-strikes" rule, the provision states:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under [the section governing proceedings *in forma pauperis*] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). The statutory restriction "[i]n no event," found in § 1915(g), is express and unequivocal. The statute does allow an exception for a prisoner who is "under imminent danger of

---

*in forma pauperis* status under 28 U.S.C. § 1915." https://www.uscourts.gov/services-forms/fees/ district-court-miscellaneous-fee-schedule.

serious physical injury." The Sixth Circuit has upheld the constitutionality of the three-strikes rule against arguments that it violates equal protection, the right of access to the courts, and due process, and that it constitutes a bill of attainder and is *ex post facto* legislation. *Wilson v. Yaklich*, 148 F.3d 596, 604–06 (6th Cir. 1998).

Plaintiff has been an active litigant in the federal courts in Michigan. In three of Plaintiff's lawsuits, the Court entered dismissals on the grounds that the cases were frivolous, malicious, and/or failed to state a claim. *See* Op. & J., *Grossman v. Neubecker*, No. 2:24-cv-103 (W.D. Mich. Oct. 28, 2024), (ECF Nos. 8, 9) (dismissing case as frivolous and for failure to state a claim); Op. & J., *Grossman v. Neubecker*, No. 2:24-cv-102 (W.D. Mich. Oct. 1, 2024), (ECF Nos. 6, 7) (dismissing case for failure to state a claim); Op. & J., *Grossman v. Heinritz*, No. 2:24-cv-99 (W.D. Mich. July 12, 2024), (ECF Nos. 7, 8) (dismissing case for failure to state a claim). All of Plaintiff's dismissals were entered after enactment of the PLRA on April 26, 1996, and all of the dismissals constitute "strikes" under the standard articulated by the Sixth Circuit in *Crump v. Blue*, 121 F.4th 1108 (6th Cir. 2024).

As explained below, Plaintiff's allegations in the present action do not fall within the "imminent danger" exception to the three-strikes rule. 28 U.S.C. § 1915(g). The Sixth Circuit set forth the following general requirements for a claim of imminent danger:

> In order to allege sufficiently imminent danger, we have held that "the threat or prison condition must be real and proximate and the danger of serious physical injury must exist at the time the complaint is filed." *Rittner v. Kinder*, 290 F. App'x 796, 797 (6th Cir. 2008) (internal quotation marks omitted). "Thus a prisoner's assertion that he or she faced danger in the past is insufficient to invoke the exception." *Id*. at 797–98; *see also* [*Taylor v. First Med. Mgmt.*, 508 F. App'x 488, 492 (6th Cir. 2012)] ("Allegations of past dangers are insufficient to invoke the exception."); *Percival v. Gerth*, 443 F. App'x 944, 946 (6th Cir. 2011) ("Assertions of past danger will not satisfy the 'imminent danger' exception."); *cf*. [*Pointer v. Wilkinson*, 502 F.3d 369, 371 n.1 (6th Cir. 2007)] (implying that past danger is insufficient for the imminent-danger exception).

3

> In addition to a temporal requirement, we have explained that the allegations must be sufficient to allow a court to draw reasonable inferences that the danger exists. To that end, "district courts may deny a prisoner leave to proceed pursuant to § 1915(g) when the prisoner's claims of imminent danger are conclusory or ridiculous, or are clearly baseless (i.e. are fantastic or delusional and rise to the level of irrational or wholly incredible)." *Rittner*, 290 F. App'x at 798 (internal quotation marks and citations omitted); *see also Taylor*, 508 F. App'x at 492 ("Allegations that are conclusory, ridiculous, or clearly baseless are also insufficient for purposes of the imminent-danger exception.").

*Vandiver v. Prison Health Services, Inc.*, 727 F.3d 580, 585 (6th Cir. 2013). A prisoner's claim of imminent danger is subject to the same notice pleading requirement as that which applies to prisoner complaints. *Id*. Consequently, a prisoner must allege facts in the complaint from which the Court could reasonably conclude that the prisoner was under an existing danger at the time he filed his complaint, but prisoner need not affirmatively prove those allegations. *Id*.

Plaintiff is currently incarcerated at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan, and the events about which he complains occurred at that facility. (*See* Compl., ECF No. 1, PageID.2.) Plaintiff sues the following MBP officials: Warden Sarah Schroeder, Assistant Deputy Warden Unknown James, Prison Counselor Unknown Collison, Sergeant Unknown Nachtman, Correctional Officer Unknown Kopi, Lieutenant Unknown Neubecker, and Correctional Officer Unknown St. Oinge. (*Id.*, PageID.2–3.) In Plaintiff's complaint, he alleges that on March 21, 2024, Defendant St. Oinge wrote Plaintiff "a destruction of mattress ticket for a hole in the bed mattress that had been there since [Plaintiff's] arrival [on] 9/13/23."[2] (*Id.*, PageID.18.) Plaintiff wrote to Defendant Collison about this issue, and during Plaintiff's hearing for this misconduct charge, Defendant Neubecker "ignored [MDOC] policy." (*Id.*, PageID.18–19.)[3]

---

[2] In this opinion, the Court corrects the punctuation in quotations from Plaintiff's complaint.

[3] The Court notes that many of the factual allegations in the present complaint are duplicative of factual allegations that Plaintiff presented in *Grossman v. Neubecker*, No. 2:24-cv-103 (W.D.

That same day, March 21, 2024, Plaintiff also submitted a note requesting protective custody. (*Id.*, PageID.4.) Plaintiff was then taken to a neighboring cell, and Defendant Kopi told Plaintiff that he would be moved to "cell #20" in "G-block." (*Id.*) In response, Plaintiff stated that he had asked for protective custody, and he either wanted to be moved to protective custody or returned to his original cell. (*Id.*)

Just prior to these events, Plaintiff had overflowed his toilet, and Defendant Kopi informed Plaintiff that "there's poop on your floor where your toilet overflowed, [so] . . . we're doing you a favor." (*Id.*) Plaintiff "continued to refuse" to move. (*Id.*) Plaintiff told Defendants Kopi and Nachtman that he "need[ed] [protective custody;] that [his] life [was] in danger and the prisoner [he was] having problems with [was] on the frontside base where [they were] moving [him]." (*Id.*) In response, Defendant Nachtman said that he did not "care what [Plaintiff] want[ed]," that Plaintiff was not going to be moved to protective custody, and that he had to move to cell #20. (*Id.*) Plaintiff "had no choice but to go to cell #20." (*Id.*) Subsequently, Plaintiff "was assaulted 4 times with bodily fluids" by another inmate. (*Id.*) Plaintiff "had no choice but to confront the inmate," and Plaintiff ultimately "paid the debt that didn't belong to [him]." (*Id.*)

On March 24, 2024, Plaintiff "sent multiple kites out to" Defendants Collison, James, and Schroeder "saying [he] would go into litigation over the 3/21/24, denial of protective custody." (*Id.*, PageID.10.) Plaintiff also "sent numerous kites out along with a grievance that they claim no one ever got." (*Id.*)

On March 29, 2024, two unnamed, non-party sergeants came to Plaintiff's cell to take him to protective custody. (*Id.*, PageID.4–5.) In response, Plaintiff told the sergeants that he had not

Mich.), which was dismissed as frivolous and for failure to state a claim. *See* Op. & J., *Grossman v. Neubecker*, No. 2:24-cv-103 (W.D. Mich Oct. 28, 2024), (ECF Nos. 8, 9). Plaintiff is advised that he may not file duplicative lawsuits.

asked for protective custody. (*Id.*, PageID.5.) Plaintiff was given a direct order, so he "had no choice" but to move. (*Id.*) Plaintiff was told to write a protective custody statement, and he refused to do so. (*Id.*) Plaintiff believes that MBP "was trying to cover the[ir] butts for the denial [of protective custody] on 3/21/24." (*Id.*) Plaintiff states that "for the past seven months now [he] ha[s] been held on false pretenses in a punitive unit." (*Id.*) Plaintiff further states that he "gave no impact statement saying who [he] need[ed] protection from and why . . . which is a 100% prerequisite to voluntary [protective custody]." (*Id.*) Plaintiff claims that "multiple constitutional violations are occurring at once," such as his $11.00 per month for indigent status being replaced with $5.00 per month because he was "in a punitive unit" and that he has been "subjected to seg[rgation] standards." (*Id.*)

Plaintiff also alleges that he has been unable "to buy denture cream for [his] false teeth which led to [his] gums bleeding." (*Id.*, PageID.6.) On April 5, 2024, Plaintiff submitted kites to healthcare about the matter "and wanted them to pay for [his] denture cream." (*Id.*; *see id.*, PageID.12.) Plaintiff "also made it clear [he] did not want a soft food diet" and "didn't need it if [he] had [his] dentures and denture cream." (*Id.*, PageID.6.) At an unspecified time, Plaintiff engaged in a hunger strike for a week. (*Id.*)

On May 10, 2024, Defendant Nachtman "in retaliation told everyone in hearing distance that [Plaintiff] was in seg[regation] on [protective custody,] which le[d] to [Plaintiff] being assaulted again by both [his] neighbors with bodily fluids." (*Id.*, PageID.5.) Plaintiff claims that the May 10, 2024, assault "le[d] [him] not to go to yard or shower for fear of assault," and he has not "left [his] cell in six months." (*Id.*; *see id.*, PageID.13 (claiming that he has not "left [his] cell for a shower or recreation for seven going on eight months").) Plaintiff alleges that "[MBP] is aware because [he] has written grievances on this as well." (*Id.*, PageID.5 *see id.*, PageID.13

(alleging that "[MBP] is well aware of this because [he] had filed [a] grievance on this on 8–4–24").)

On August 15, 2024, Defendant Nachtman "harassed [Plaintiff] and tried to remove [him] out of [his] protective custody cell." (*Id.*, PageID.7.) Plaintiff claims that he was given an order by Defendant Nachtman and non-party Correctional Officer Roydes, which he did not hear due to his hearing impairment and "because it was shower time and summer fans were going." (*Id.*; *see id.*, PageID.14–15.)

Plaintiff claims that he "was being harassed and treated unfairly by officers and employees for writing grievances on each situation . . . for the past seven months now and still counting until [he is] transferred." (*Id.*, PageID.6.) Plaintiff also claims that the Delta Unit in segregation "is unsanitary with feces and urine, rotten food all over the walls which [he] ha[s] been smelling for the past seven months." (*Id.*; *see id.*, PageID.16.) Plaintiff "feel[s] sick to [his] stomach and nauseated from the smell in the Unit." (*Id.*, PageID.6; *see id.*, PageID.16.) Plaintiff filed a grievance about this on September 24, 2024, and "told [Defendant] James on 10/3/24 who just laughed at [Plaintiff]." (*Id.*, PageID.16.) Plaintiff alleges that Defendant Schroeder "was also involved with everything," and "she was written on 3/28/24 about the denial of protective custody on 3/21/24." (*Id.*) Additionally, Defendant Schroeder "was part of [the Security Classification Committee (SCC)] on 6/28/24 and also denied [Plaintiff] to leave to general population after [the] truth was out that [Plaintiff] was assaulted because of [the] denial of protective custody." (*Id.*) Plaintiff has also filed "numerous grievances including her in each one." (*Id.*)

Further, Plaintiff alleges that "Defendant Collison had filed false documentation and had said things about [Plaintiff] that were not true on the CSJ-686 report,"[4] and Collison "even included a kite that [Plaintiff had] written [on] 3/24/24 that ha[d] nothing to do with a protection need." (*Id.*)

Additionally, Plaintiff claims that the "[MBP] Administration runs [the Security Classification Committee] every month, [and] so [he] ha[s] written numerous grievances one each month . . . asking to let [him] out of segregation." (*Id.*, PageID.13.) Plaintiff alleges the "administration is doing this because [he] had threaten[ed] [them] with litigation." (*Id.*) Plaintiff also alleges that he has "been wrongly confined for almost 8 months now and still counting." (*Id.*, PageID.17.)

As an initial matter, the majority of Plaintiff's allegations involve discrete, past events that happened months before Plaintiff filed this action on November 4, 2024.[5] Therefore, the majority of any alleged danger occurred in the past, and the "assertion that [Plaintiff] faced danger in the past is insufficient to invoke the exception." *Vandiver*, 727 F.3d at 585 (citations omitted).

Moreover, although Plaintiff alleges that he continues to be held in a segregation unit at MBP, which he alleges "is unsanitary with feces and urine[ and] rotten food all over the walls," Plaintiff alleges only that he "feel[s] sick to [his] stomach and nauseated from the smell in the Unit," and he does not allege any facts to suggest that he is at risk of any serious injury. (Compl., ECF No. 1, PageID.5.) And, although Plaintiff alleges that he has not "left [his] cell in six months" "to [go to] yard or shower for fear of assault," besides this conclusory allegation about a vague and nonspecific "fear of assault," Plaintiff alleges no facts to suggest that he is actually in imminent

---

[4] Plaintiff does not provide any further explanation or facts about the CSJ-686 report in question.

[5] This is the date on which Plaintiff signed his complaint. (*See* Compl., ECF No. 1, PageID.20.)

danger of any such assault. (*Id.*; *see id.*, PageID.13 (claiming that he has chosen not to leave his "cell for a shower or recreation for seven going on eight months").)

Furthermore, even assuming, without deciding, that the conditions alleged by Plaintiff showed that he faced some risk of imminent danger of serious physical injury at the time that he initiated this action, Plaintiff alleges no *facts* to suggest that he is *presently* in imminent danger *from the named Defendants*. Specifically, with respect to Plaintiff's allegations regarding the conditions of his present confinement and his general "fear of assault," Plaintiff fails to allege any facts to show that any of the named Defendants are involved in, or have any knowledge of, the conditions of his present confinement. Instead, Plaintiff alleges that the "[MBP] Administration runs [the Security Classification Committee] every month, [and] so [he] ha[s] written numerous grievances one each month . . . asking to let [him] out of segregation," that the "administration is doing this because [he] had threaten[ed] [them] with litigation," and that he has "been wrongly confined for almost 8 months now and still counting." (*See, e.g.*, *id.*, PageID.13, 17); *cf. Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) ("Summary reference to a single, five-headed 'Defendants' [or staff] does not support a reasonable inference that each Defendant is liable . . . ." (citation omitted)).

Although the Sixth Circuit has not yet specifically addressed whether the imminent-danger exception requires a nexus between the danger and the allegations of the complaint, *see Vandiver*, 727 F.3d at 588 (declining to reach issue), this Court concurs with the uniform opinion of all seven circuits that have addressed the issue: some nexus between the imminent danger and the claims raised is required in order to protect the meaning of the entire provision. This nexus requirement does not add a judicially created element to the statute. Instead, as the *Pettus* court recognized, a reading of the statute that incorporates a nexus rule flows from the fundamental rule of statutory

construction requiring that a statute be read as a whole. *Pettus v. Morgenthau*, 554 F.3d 293, 297

(2d Cir. 2009). That rule of construction has been regularly repeated by the Supreme Court:

> The meaning—or ambiguity—of certain words or phrases may only become
> evident when placed in context. . . . It is a "fundamental canon of statutory
> construction that the words of a statute must be read in their context and with a
> view to their place in the overall statutory scheme."

*FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132–33 (2000) (quoting *Davis v. Mich.*

*Dep't of Treasury*, 489 U.S. 803, 809 (1989)); *see also Clark v. Rameker*, 573 U.S. 122, 131 (2014)

(citing *Corley v. United States*, 556 U.S. 303, 314 (2009)).

An equally fundamental canon of statutory interpretation is that exceptions to a general

rule must be read narrowly. *See Comm'r of Internal Revenue v. Clark*, 489 U.S. 726, 739 (1989)

("In construing provisions . . . in which a general statement of policy is qualified by an exception,

we usually read the exception narrowly in order to preserve the primary operation of the

provision."). And from this last canon arises the related principle that exceptions must not be

interpreted so broadly as to swallow the rule. *See Cuomo v. Clearing House Ass'n, L.L.C.*, 557

U.S. 519, 530 (2009) (rejecting an interpretation of a statutory exception that "would swallow the

rule").

As applied to § 1915(g), the imminent-danger exception must be read in light of the strong

general thrust of the PLRA, which was "aimed at the skyrocketing numbers of claims filed by

prisoners—many of which are meritless—and the corresponding burden those filings have placed

on the federal courts." *Hampton*, 106 F.3d at 1286. In addition, § 1915(g) itself states that "*[i]n no*

*event* shall a prisoner bring a civil action or appeal . . ." if he has three strikes, unless his complaint

alleges facts that fall within the narrow exception in issue. 28 U.S.C. § 1915(g) (emphasis added);

*Pettus*, 554 U.S. at 297. Interpreting the statute without some link between the imminent danger

alleged and the redress sought would cause the exception to swallow the rule, permitting a prisoner

to file as many lawsuits as he wishes on any subject—as long as he can state that he is in imminent danger from something, even if that something is unrelated to his claims and unrelated to the named defendants. *See Pettus*, 554 F.3d at 297; *Pinson v. U.S. Dep't of Just.*, 964 F.3d 65, 71 (D.C. Cir. 2020). Such a reading of the statute would be inconsistent with the general rule of statutory construction, which requires that exceptions to a rule be read narrowly, so as not to undermine the general rule. *Clark*, 489 U.S. at 739; 2A Norman J. Singer, *Statutes and Statutory Construction*, § 47.11 at 246–47 (6th ed. 2000) ("[W]here a general provision in a statute has certain limited exceptions, all doubts should be resolved in favor of the general provision rather than exceptions."). Here, Plaintiff has failed to allege facts to show the requisite nexus between any alleged present danger and the named Defendants in this action.

Accordingly, for all of the reasons set forth above, Plaintiff is barred from proceeding *in forma pauperis* under § 1915(g). Plaintiff also has not paid the $405.00 civil action filing fees applicable to those not permitted to proceed *in forma pauperis*. The Court will therefore dismiss this action without prejudice. *See Dupree v. Palmer*, 284 F.3d 1234, 1236 (11th Cir. 2002) ("[T]he proper procedure is for the district court to dismiss the complaint without prejudice when it denies the prisoner leave to proceed *in forma pauperis* pursuant to the three strikes provision of § 1915(g)."). Plaintiff is free to refile his complaint as a new action in this Court if he submits the filing fees at the time that he initiates the new action.

### <u>Conclusion</u>

For the foregoing reasons, the Court will deny Plaintiff leave to proceed *in forma pauperis*. The Court will dismiss this action without prejudice to Plaintiff's right to refile his complaint as a new action in this Court with the full civil action filing fees.[6]

For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. *See* 28 U.S.C. § 1915(a)(3); *McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Further, should Plaintiff appeal this decision, he must pay the $605.00 appellate filing fee in a lump sum, because he is prohibited from proceeding *in forma pauperis* on appeal by 28 U.S.C. § 1915(g).

An order and judgment consistent with this opinion will be entered.


Dated:   __December 20, 2024_____          __/s/ Paul L. Maloney_____
                                                                      Paul L. Maloney
                                                                      United States District Judge

---

[6] Because Plaintiff has the opportunity to refile his complaint as a new action in this Court by paying the full civil action filing fees at the time of filing the new action, the Court will not assess the district court filing fees in the present action.